**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN O'CONNOR,** | : | **No. 3:26cv543** |
| | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **LT. PASSERETTI, <u>et al.</u>,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Kevin O'Connor ("O'Connor"), an inmate housed at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township"), commenced this civil rights action pursuant to 42 U.S.C. § 1983, in the Court of Common Pleas of Northumberland County. (Doc. 1-1). Thereafter, defendants removed the action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1).

Named as defendants are Lieutenant Passeretti, Correctional Officer Waldman, Grievance Coordinator Wheary, Superintendent McGinley, Deputy Superintendent Gibson, Deputy Superintendent Mararchi, Major Burns, Chief Grievance Coordinator Moore, Chief Grievance Coordinator Varner, Major Merit,

Lieutenant Gardner, Lieutenant Keitz, Lieutenant Calhoun, and Lieutenant Gordener.[1]  (Doc. 1-1 ¶¶ 4-17).

Presently pending is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 3).  For the reasons that follow, the court will grant the motion and grant O'Connor limited leave to amend.

## I.    Background

O'Connor alleges that on September 26, 2023, there was a major security search of the entire A-Unit.  (Doc. 1-1 ¶ 18).  During this search, all inmates were directed to strip down to their boxer shorts or underwear.  (Id.).

After O'Connor's search was completed and he was back in his cell, defendant Passaretti ordered O'Connor to "cuff up."  (Id. ¶¶ 19-20).  O'Connor was only wearing a t-shirt and boxer shorts and asked defendant Passaretti if he could put on clothes.  (Id. ¶¶ 21-22).  Defendant Passaretti allegedly responded that he was giving O'Connor "a direct order to cuff up now and come along, or I'm taking your ass to the RHU[.]" (Id. ¶ 22).  O'Connor then complied with the order and was handcuffed and escorted out of the cell by defendants Passaretti and Waldman.  (Id. ¶ 23).  At this point, O'Connor was wearing a t-shirt, boxer

---

[1]  O'Connor spelled the following defendants' names as follows: Merit, Gardener, Keitz, Calhoun, and Gordener.  (Doc. 1-1 ¶¶ 6-8, 11, 15).  In their filings, defendants spell these names as Merit-Scully, Gardner, Neitz, Cohoon, and Gordon, respectively.  (See Doc. 4).  The court will adopt defendants' spellings as correct.

shorts, and shower shoes. (Id.). Defendants Passaretti and Waldman escorted O'Connor to the visiting room, where an x-ray machine was located. (Id. ¶ 25).

During the escort to the visiting room, O'Connor alleges that his genitalia became exposed through his boxer shorts. (Id. ¶ 26). He was unable to adjust himself because his hands were handcuffed behind his back. (Id.). O'Connor alleges that while his genitalia were exposed, he passed other male and female individuals in the prison. (Id. ¶ 27). When they arrived at the visiting room, O'Connor underwent an x-ray to search for contraband. (Id. ¶ 28). O'Connor alleges that he was not allowed to adjust himself and was escorted back to his unit with his genitalia still exposed. (Id. ¶ 29).

After this incident, O'Connor asserts that he was "humiliated" and filed a written sexual abuse/harassment statement. (Id. ¶¶ 30-31). He also asserts that he filed grievances related to the incident and that defendants McGinley, Varner, and Moore denied the grievances and appeals. (Id. ¶¶ 33, 34, 36). In addition to these filings, O'Connor allegedly spoke with defendants Merit-Scully, Gordon, Gardner, Neitz, Cohoon, Gibson, and Mirarchi regarding the events. (Id. ¶¶ 32, 35).

In his complaint, O'Connor raises claims pursuant to the First Amendment, Eighth Amendment, and Fourteenth Amendment. (Id. ¶¶ 1, 39, 40, 41). He also

alleges that defendants violated prison policy and committed negligence and malpractice.  (Id.).

Defendants now move to dismiss the complaint on the following grounds: (1) O'Connor failed to allege the personal involvement of defendants Moore, Varner, Wheary, McGinley, Merritt-Scully, Gardner, Neitz, Cohoon, Burns, Mirarchi, Gordner, and Gibson; (2) O'Connor failed to allege a plausible First Amendment claim; (3) the violation of a prison policy does not amount to a constitutional violation; and (4) O'Connor failed to allege a plausible Fourteenth Amendment claim.  (Doc. 4).

## II.    **Legal Standards**

### A.    Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the

complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the…claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff

5

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

    B.    42 U.S.C. Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.  **Discussion**

### A.  Lack of Personal Involvement

In order to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago, 629 F.3d at 128 (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

Allegations of personal involvement must be made with appropriate particularity in that the complaint must allege the particulars of conduct, time,

place, and personal responsibility.  Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08.  Subsequent knowledge of an incident is insufficient to demonstrate that a state actor played an "affirmative part" in the alleged misconduct.  Rode, 845 F.2d at 1207-08 (the after-the-fact submission of a grievance is "simply insufficient" to establish a defendant's knowledge of an underlying constitutional violation at the time it occurred).  It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights."  Kirk v. Roan, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting Evancho, 423 F.3d at 353).

### 1.    Defendant Burns

Other than listing Major Burns as a defendant, the complaint does not contain a single allegation against this individual.  (Doc. 1-1 ¶ 13; see Doc. 1-1).  Because the complaint is completely silent as to defendant Burns, it is impossible to determine the alleged unconstitutional action, if any, taken by this defendant.  The court will dismiss the claims against defendant Burns without prejudice and with leave to amend.

### 2.    Defendants Merit-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi

O'Connor alleges that after the events of September 2023, he "spoke with" defendants Merit-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi.  (Doc. 1-1 ¶¶ 32, 35).  Aside from informing these defendants of the alleged

events, there is a complete absence of factual allegations in the complaint which would establish how these defendants were personally involved in a violation of O'Connor's constitutional rights.  See Dooley, 957 F.3d at 374 (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)); Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020) (explaining that, in order for a plaintiff to prevail under Section 1983, he must make "a showing that each defendant was personally involved in the alleged wrongdoing"); see also Buxton v. Wetzel, 2024 WL 4199009, at *2 (3d Cir. Sept. 16, 2024) (the "mere knowledge of an event after the fact is insufficient to incur liability under § 1983").

To the extent O'Connor seeks to assert a supervisory liability claim against defendants Merit-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi based merely on allegations that they supervised individuals at SCI-Camp Hill, he cannot do so because liability under Section 1983 cannot be predicated on respondeat superior. See Chavarriaga, 806 F.3d at 227 ("[Plaintiff] cannot predicate liability on her § 1983 claims on a respondeat superior basis." (citing Rode, 845 F.2d at 1207) (emphasis omitted)); Robinson v. Delbalso, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief.  First, he failed to allege the defendants' personal

9

involvement, and he cannot predicate liability on his § 1983 claims on a respondeat superior basis." (internal citations omitted)).

Instead, if O'Connor seeks to hold defendants Merit-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi as supervisors liable for unconstitutional acts by their subordinates (see Doc. 6, at 1-2), his allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); see Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—

the policy-and-practice strand of supervisory liability—a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.  Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205,

216 (3d Cir. 2001)).

For the second theory of supervisory liability—participating in, directing

others to, or knowledge and acquiescence of constitutional violation—

generalized allegations that a supervisory defendant is "in charge of" or

"responsible for" an office or facility are insufficient to allege personal

involvement in an underlying constitutional violation.  See Saisi v. Murray, 822 F.

App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were in charge

of agencies that allowed this to happen, and that liability stemmed merely from

defendants' 'belief' that their conduct would be 'tolerated.'  However, a director

cannot be held liable 'simply because of [their] position as the head of the

[agency].'" (quoting Evancho, 423 F.3d at 354).  Additionally, "[a]lthough a court

can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6).

Here, O'Connor's complaint is devoid of facts demonstrating that any policies or procedures in effect at the time created an unreasonable risk of a constitutional violation, let alone facts demonstrating that defendants Merit-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi established or maintained such a policy or procedure.  Ultimately, O'Connor's supervisory liability claim is a bare conclusion, which is insufficient to state a claim for relief. Hence, the court will dismiss the claims against defendants Merit-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi without prejudice and with leave to amend.

### 3.     Defendants Wheary, McGinley, Moore, and Varner

O'Connor asserts that defendants Wheary, McGinley, Moore, and Varner each responded to his grievances or grievance appeals.  (Doc. 1-1 ¶ 36; Doc. 1-1, at 25, 27, 29, 31, 33, 35).  The purported allegations against these defendants amount to their responses to grievances in a manner that O'Connor is unhappy with.  (Id.).  "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Little v. Mottern, 2017 WL

12

934464, at *11 (M.D. Pa. Mar. 7, 2017) (quoting Rauso v. Vaughn, 2000 WL 873285, at *16 (E.D. Pa. June 26, 2000)). Thus, O'Connor's allegations are insufficient to establish these defendants' personal involvement in the challenged conduct under Section 1983. See Caldwell v. Beard, 2008 WL 2887810, at *4 (W.D. Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd, 2009 WL 1111545 (3d Cir. April 27, 2009). Accordingly, the claims against defendants Wheary, McGinley, Moore, and Varner will be dismissed with prejudice and without leave to amend.

B.    First Amendment Claim

To prevail on his retaliation claim, O'Connor must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citing Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and

the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link.  Id. (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

Once a plaintiff has established that he was subjected to a retaliatory disciplinary measure, the burden shifts to the defendants to demonstrate by a preponderance of the evidence that they would have made the same penological decision absent the protected conduct.  Rauser, 241 F.3d at 334.  This determination requires the court to "evaluate 'the quantum of evidence'" in support of the misconduct "to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them."  Watson, 834 F.3d at 426.

O'Connor references the First Amendment, however he does not set forth any allegations in support of a retaliation claim.  (Doc. 1-1 ¶ 41; see Doc. 1-1).  The court finds that O'Connor's purported retaliation claim fails to meet the basic pleading requirements of Iqbal and Twombly.  See Iqbal, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  The retaliation claim consists of a legal conclusion and does not include any allegations directed towards any defendants.  Therefore, the First Amendment retaliation claim will be dismissed without prejudice and with leave to amend.

14

C.    <u>Claim Based on Failure to Follow Prison Policy</u>

O'Connor alleges that defendants "fail[ed] to follow their own prison policies, rules and regulations…" and "breached their oath of occupation…" (Doc. 1-1 ¶ 40).  This claim is not plausible because the failure of a prison official to act in accordance with prison policies does not give rise to a constitutional claim. See <u>Bullard v. Scism</u>, 449 F. App'x 232, 235 (3d Cir. 2011) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); <u>Atwell v. Lavan</u>, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted) ("a prison policy manual does not have the force of law and does not rise to the level of a regulation" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation.").  This claim will be dismissed with prejudice and without leave to amend.

D.    <u>Eighth Amendment Claim</u>[2]

O'Connor appears to allege that defendants Passaretti and Waldman violated his Eighth Amendment rights when they escorted him through the prison, exposing his private parts "for the world to see." (Doc. 1-1 ¶¶ 26-27, 31).  O'Connor asserts that he submitted "an inmate written statement of sexual abuse/harassment" and formal grievances related to this incident. (<u>Id.</u> ¶¶ 31-37).

_____

[2] Defendants' motion does not address the Eighth Amendment claim.  Nonetheless, the court will address this claim <u>sua sponte</u>.  See <u>Kaetz v. TransUnion</u>, 2006 WL 8451343, at *3 (M.D. Pa. April 26, 2006) (collecting cases discussing <u>sua sponte</u> authority to dismiss claims).

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement.  Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005).  Sexual abuse of inmates or detainees may violate the Eighth Amendment.  Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution").

In the Eighth Amendment context, a plaintiff must satisfy both an objective and subjective prong akin to excessive force claims.  Ricks, 891 F.3d at 475.  In that regard, the conduct in question must be "objectively, sufficiently intolerable and cruel, capable of causing harm and the official must have a culpable state of mind."  Id.  "Regarding the subjective prong, [the court] consider[s] whether the official had a legitimate penological purpose or if he or she acted maliciously and sadistically for the very purpose of causing harm."  Id. (internal quotations omitted).

An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator.  See Williams v. Wetzel, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eighth Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); Armstrong v. Diraimo, No. 17-cv-237, 2018 WL 6788524, at *4 (W.D. Pa. Dec. 26, 2018), aff'd, 781 F. App'x 61 (3d Cir. 2019); McCain v. Wetzel, No. 17-cv-194, 2018 WL 1211507, at *3 (W.D.

16

Pa. Mar. 8, 2018) ("sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"); <u>Washington v. Gilmore</u>, No. 15-cv-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct physical contact" with the alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." <u>McCain</u>, 2018 WL 1211507, at *3 (citing <u>Manon v. Garrison</u>, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." <u>Id.</u>

O'Connor's complaint fails to state a claim for sexual abuse because it does not allege any direct physical contact with defendants Passaretti and Waldman or that the escort was sexual in nature. O'Connor does not allege that defendants Passaretti and Waldman touched him in any way, but only states that they escorted him through the prison and his genitals were unintentionally exposed through his boxer shorts during the escort. (Doc. 1-1 ¶¶ 23-29). Without more, these allegations are insufficient to meet the objective prong of an Eighth Amendment sexual abuse claim. <u>See</u> <u>Ricks</u>, 891 F.3d at 477 (noting that "objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges

17

of sexual activity for special treatment or to avoid discipline"); Voorhis v. Lindsey, No. 23-cv-93, 2024 WL 3862751, at *6 (W.D. Pa. July 29, 2024) (determining that prisoner-plaintiff's allegations of sexual harassment and sexual abuse were implausible insofar as, inter alia, plaintiff neither alleged "contact that could conceivably be described as 'sexual[,' n]or was the limited incident described in his complaint so 'severe or serious' as to be 'repugnant to the conscience of mankind.'" (quoting Ricks, 891 F.3d at 474), report and recommendation adopted, 2024 WL 3861408 (W.D. Pa. Aug. 19, 2024).  The court will dismiss the Eighth Amendment claim without prejudice and with leave to amend.

      E.     Fourteenth Amendment Claims

      **1.     Due Process Claim**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution contains both procedural and substantive protections.  *See* U.S. Const. amend. XIV, § 1.  The substantive component of the Due Process Clause safeguards against certain deprivations of individuals' "life, liberty, and property" by state actors "regardless of the fairness of the procedures used to implement them."  L.R. v. Sch. Dist. Of Phila., 836 F.3d 235, 241 (3d Cir. 2016) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)).  A substantive due process claim, however, cannot be maintained when the alleged constitutional violation is "covered by a specific constitutional provision, such as

18

the Fourth or Eighth Amendment." Porter v. Pa. Dep't of Corr., 974 F.3d 431, 447 (3d Cir. 2020) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).  In such situations, the claim must be analyzed under the rubric of the more specific constitutional provision rather than substantive due process, see id., as substantive due process is an "unchartered area" with "scarce and open-ended" guideposts, Collins, 503 U.S. at 125.  The "more-specific-provision rule" will often apply when the challenged conduct underlying the substantive due process claim is the same conduct that implicates a more explicit constitutional provision.  See Porter, 974 F.3d at 448.

Insofar as O'Connor is asserting a substantive due process claim related to the September 2023 incident, that claim is barred by the more-specific-provision rule.  The court will dismiss O'Connor's Fourteenth Amendment substantive due process claim with prejudice and without leave to amend.

### 2.    Equal Protection Claim

O'Connor's equal protection claim will also be dismissed.  The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1)

19

he is a member of a protected class; and (2) he was treated differently from similarly situated inmates.  See id.  Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination to state an equal protection claim.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Specifically, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  However, prison inmates are not members of a protected class.  See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class).  O'Connor generally alleges that there was a "major security search of the entire A-Unit."  (Doc. 1-1 ¶ 18).  However, he fails to allege how defendants treated him differently than others similarly situated. Additionally, O'Connor fails to identify any personal involvement by any named defendant that would subject them to liability for any alleged equal protection violation.  For these reasons, the court will dismiss the equal protection claim without prejudice and with leave to amend.

F.    State Law Claims

O'Connor appears to assert state law negligence and malpractice claims. (Doc. 1-1 ¶ 39).  However, due to the court's resolution of O'Connor's Section

20

1983 claims, there is currently no viable federal claim before the court supporting the exercise of supplemental jurisdiction over his state law claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (stating that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so"). The court finds that consideration of "judicial economy, convenience, and fairness to the parties" does not "provide an affirmative justification" for retaining jurisdiction over O'Connor's negligence and malpractice claims. See Hedges, 204 F.3d at 123. Therefore, the court declines to exercise supplemental jurisdiction over O'Connor's state law negligence and malpractice claims.

## IV.   Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit

21

Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

In accordance with this standard, the court will grant O'Connor leave to amend the following claims: the claims against defendants Burns, Merit-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi, the First Amendment claim, Eighth Amendment claim, and Fourteenth Amendment equal protection claim.  O'Connor is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint shall set forth his claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

The court finds that it would be futile to allow O'Connor to amend the following claims: the claims against defendants Wheary, McGinley, Moore, and Varner, the violation of prison policy claim, and the Fourteenth Amendment due process claim.

## V.    Conclusion

Consistent with the foregoing, the court will grant defendants' motion to dismiss. (Doc. 3). O'Connor will be afforded the opportunity to file an amended complaint in order to attempt to cure the deficiencies identified above. An appropriate order follows.

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court

Dated:    May _____, 2026