**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN O'CONNOR,** | : | **No. 3:26cv543** |
| | : | |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **LT. PASSARETTI, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

# MEMORANDUM

Plaintiff Kevin O'Connor ("O'Connor"), an inmate housed at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township"), commenced this civil rights action pursuant to 42 U.S.C. § 1983, in the Court of Common Pleas of Northumberland County. (Doc. 1-1). Thereafter, defendants removed the action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1).

By memorandum and order dated May 11, 2026, the court granted defendants' motion to dismiss the original complaint and granted O'Connor limited leave to amend.[1] (Docs. 9, 10). In response, O'Connor filed an amended complaint against Lieutenant Passaretti, Correctional Officer Waldman, Major

[1] The court only granted O'Connor leave to amend his claims against defendants Burns, Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi, as well as his First, Eighth, and Fourteenth Amendment claims. (Docs. 9, 10).

Merritt-Scully, Major Burns, Lieutenant Gardner, Lieutenant Nietz, Lieutenant Cohoon, Deputy Superintendent Gibson, Deputy Superintendent Mirarchi, and Lieutenant Gordon. (Doc. 13 ¶¶ 4-13).

Presently before the court is defendants' Rule 12(b)(6) motion to dismiss the amended complaint. (Doc. 14). For the reasons set forth below, the court will grant the motion.

## I. Background

O'Connor alleges that on September 26, 2023, there was a major security search of the entire A-Unit. (Doc. 13 ¶ 14). During this search, all inmates were directed to strip down to their boxer shorts or underwear. (Id.). After O'Connor was strip searched and his cell was searched, he was returned to his cell "without incident." (Id. ¶ 15).

Once back in his cell, defendant Passaretti allegedly ordered O'Connor to "cuff up." (Id. ¶ 16). O'Connor was only wearing a t-shirt and boxer shorts and asked defendant Passaretti if he could put on clothes. (Id. ¶¶ 17-18). Defendant Passaretti allegedly responded that he was giving O'Connor "a direct order to cuff up now and come along, or I'm taking your ass to the R.H.U." (Id. ¶ 18). O'Connor then complied with the order and was handcuffed and escorted out of the cell by defendants Passaretti and Waldman. (Id. ¶ 19). At this point, O'Connor was wearing a t-shirt, boxer shorts, and shower shoes. (Id.).

Defendants Passaretti and Waldman escorted O'Connor to the visiting room, where an x-ray machine was located. (Id. ¶ 21).

During the escort to the visiting room, O'Connor alleges that his genitalia became exposed through his boxer shorts. (Id. ¶ 22). He was unable to adjust himself because his hands were handcuffed behind his back. (Id.). O'Connor alleges that while his genitalia were exposed, he passed other male and female individuals in the prison. (Id. ¶ 23).

When they arrived at the visiting room, O'Connor underwent an x-ray to search for contraband and was not given the opportunity to "fix his boxer shorts." (Id. ¶ 24). After the x-ray was conducted, O'Connor alleges that he again could not "fix his boxer shorts" and was escorted back to his unit. (Id. ¶ 25). O'Connor also alleges that, during the escort, it was "windy, rainy, and cold." (Id. ¶¶ 21-22, 25-26).

After this incident, O'Connor asserts that he was "humiliated" and filed a written sexual abuse/harassment statement. (Id. ¶¶ 26-27). O'Connor alleges that he spoke with defendants Meritt-Scully, Gardner, Neitz, and Cohoon regarding the incident, and that each individual responded with "indifference[.]" (Id. ¶ 28).

O'Connor asserts that he filed grievances and grievance appeals related to this incident, but that each filing was rejected or denied. (Id. ¶¶ 29-33).

O'Connor alleges that he spoke with defendants Gibson and Mirarchi in an effort to resolve the grievance denials but received no relief. (Id. ¶ 35). He also sought to obtain an interview about the incident, but he alleges that, to date, there has been no "real" interview. (Id. ¶¶ 35, 37).

Defendants now move to dismiss the amended complaint on the grounds that O'Connor: (1) failed to allege the personal involvement of Burns, Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi; (2) failed to allege a plausible First Amendment claim; (3) failed to allege a plausible Eighth Amendment claim; and (4) failed to allege a plausible Fourteenth Amendment claim. (Doc. 15).

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint,

it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the…claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

B. 42 U.S.C. Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III. Discussion

### A. Personal Involvement

In order to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)). Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago, 629 F.3d at 128 (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

Allegations of personal involvement must be made with appropriate particularity in that the complaint must allege the particulars of conduct, time,

place, and personal responsibility. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Subsequent knowledge of an incident is insufficient to demonstrate that a state actor played an "affirmative part" in the alleged misconduct. Rode, 845 F.2d at 1207-08 (the after-the-fact submission of a grievance is "simply insufficient" to establish a defendant's knowledge of an underlying constitutional violation at the time it occurred). It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." Kirk v. Roan, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting Evancho, 423 F.3d at 353).

**1. Defendant Burns**

Similar to the initial complaint, the amended complaint does not contain a single allegation against defendant Burns—O'Connor only listed Major Burns as a defendant in this action. (Doc. 13). Because the amended complaint is completely silent as to defendant Burns, it is impossible to determine the alleged unconstitutional action, if any, taken by this defendant. The court will dismiss any purported claims against defendant Burns.

**2. Defendants Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi**

With respect to the claims against defendants Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, the amended complaint's allegations are just as sparse as those in the initial complaint.

In the amended complaint, O'Connor alleges that after the incident on September 26, 2023, he "spoke with" defendants Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi. (Doc. 13 ¶¶ 28, 35). Aside from informing these defendants of the alleged events, there is a complete absence of factual allegations in the amended complaint which would establish how these defendants were personally involved in a violation of O'Connor's constitutional rights. See Dooley, 957 F.3d at 374 (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)); Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020) (explaining that, in order for a plaintiff to prevail under Section 1983, he must make "a showing that each defendant was personally involved in the alleged wrongdoing"); see also Buxton v. Wetzel, 2024 WL 4199009, at *2 (3d Cir. Sept. 16, 2024) (the "mere knowledge of an event after the fact is insufficient to incur liability under § 1983").

O'Connor also alleges that he spoke with defendants Gibson and Mirarchi in an attempt to resolve his grievances. (Doc. 13 ¶ 35). However, participation in the grievance process cannot support personal involvement for purposes of Section 1983. See Mincy v. Chmielsewski, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Information

learned through “the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct.” Mearin v. Swartz, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013). O’Connor’s claims against Gibson and Mirarchi fail insofar as they are based on the involvement of these defendants in the grievance process.

To the extent O’Connor seeks to assert a supervisory liability claim against defendants Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi based merely on allegations that they supervised individuals at SCI-Camp Hill, he cannot do so because liability under Section 1983 cannot be predicated on respondeat superior. See Chavarriaga, 806 F.3d at 227 (“[Plaintiff] cannot predicate liability on her § 1983 claims on a respondeat superior basis.” (citing Rode, 845 F.2d at 1207) (emphasis omitted)); Robinson v. Delbalso, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) (“We agree with the District Court that Robinson’s second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants’ personal involvement, and he cannot predicate liability on his § 1983 claims on a respondeat superior basis.” (internal citations omitted)).

The court previously instructed O’Connor that, if he seeks to hold defendants Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi (as supervisors) liable for unconstitutional acts by their subordinates, his

allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. *ex rel.* J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); see Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the

> supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).

For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho, 423 F.3d at 354). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6).

O'Connor's amended complaint is devoid of facts demonstrating that any policies or procedures in effect at the time created an unreasonable risk of a

constitutional violation, let alone facts demonstrating that defendants Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi established or maintained such a policy or procedure. O'Connor's conclusory supervisory liability claim is insufficient to state a claim for relief. The court will dismiss the claims against defendants Merritt-Scully, Gardner, Neitz, Cohoon, Gibson, Gordon, and Mirarchi.

B. First Amendment Retaliation Claim

Defendants construe the amended complaint as raising a First Amendment retaliation claim. (Doc. 15, at 16-17). In his opposition brief, O'Connor asserts that he "never filed a First Amendment retaliation claim." (Doc. 25 ¶ 5). Since the amended complaint references the First Amendment (Doc. 13 ¶¶ 39-40), the court will address any potential retaliation claim.

To prevail on a retaliation claim, O'Connor must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citing Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (quoting Suppan v. Dadonna, 203

F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. Id. (citing Lauren W. *ex rel.* Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

Once a plaintiff has established that he was subjected to a retaliatory disciplinary measure, the burden shifts to the defendants to demonstrate by a preponderance of the evidence that they would have made the same penological decision absent the protected conduct. Rauser, 241 F.3d at 334. This determination requires the court to "evaluate 'the quantum of evidence'" in support of the misconduct "to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them." Watson, 834 F.3d at 426.

O'Connor references the First Amendment, however he does not set forth any allegations in support of a retaliation claim. (Doc. 13 ¶¶ 39-40). The court finds that O'Connor's purported retaliation claim fails to meet the basic pleading requirements of Iqbal and Twombly. See Iqbal, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). The retaliation claim does not

include any allegations directed towards any defendants. Therefore, the First Amendment retaliation claim will be dismissed.

C. Eighth Amendment Claims against Passaretti and Waldman

**1. Sexual Abuse and Harassment Claims**

When the court dismissed O'Connor's initial claims for sexual abuse and harassment, the court explained that such claims require a showing of physical contact with the alleged perpetrator. (Doc. 9, at 15-18). In the amended complaint, O'Connor again alleges that defendants Passaretti and Waldman violated his Eighth Amendment rights when they escorted him through the prison, exposing his private parts "for the world to see." (Doc. 13 ¶¶ 22-25, 39-40). O'Connor asserts that he submitted "an inmate written statement of sexual abuse/harassment" and formal grievances related to this incident. (Id. ¶¶ 27-36). His claims again fail.

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Sexual abuse of inmates or detainees may violate the Eighth Amendment. Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution"). This framework requires a plaintiff to satisfy both a subjective and an objective element. Id. at 473 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

To satisfy the objective element, the conduct must be "sufficiently intolerable and cruel, capable of causing harm." Ricks, 891 F.3d at 475. "Regarding the subjective prong, [the court] consider[s] whether the official had a legitimate penological purpose or if he or she acted maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations omitted).

An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. See Williams v. Wetzel, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eighth Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); Armstrong v. Diraimo, No. 17-cv-237, 2018 WL 6788524, at *4 (W.D. Pa. Dec. 26, 2018), *aff'd*, 781 F. App'x 61 (3d Cir. 2019); McCain v. Wetzel, No. 17-cv-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) ("sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"); Washington v. Gilmore, No. 15-cv-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct physical contact" with the alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." McCain, 2018 WL 1211507, at *3 (citing Manon v. Garrison, 2012 WL 3542328 (M.D. Pa.

Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." Id.

O'Connor's amended complaint fails to state a claim for sexual abuse because it does not allege any direct physical contact with defendants Passaretti and Waldman or that the escort was sexual in nature. O'Connor does not allege that defendants Passaretti and Waldman touched him in any way, but only states that they escorted him through the prison and his genitals were unintentionally exposed through his boxer shorts during the escort. (Doc. 13 ¶¶ 22-25). Because O'Connor does not allege any physical contact of a sexual nature, this claim is not plausible. See Ricks, 891 F.3d at 477 (noting that "objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline"); Voorhis v. Lindsey, No. 23-cv-93, 2024 WL 3862751, at *6 (W.D. Pa. July 29, 2024) (determining that prisoner-plaintiff's allegations of sexual harassment and sexual abuse were implausible insofar as, *inter alia*, plaintiff neither alleged "contact that could conceivably be described as 'sexual[,' n]or was the limited incident described in his complaint so 'severe or serious' as to be 'repugnant to the conscience of mankind.'" (quoting Ricks, 891 F.3d at 474), report and recommendation

adopted, 2024 WL 3861408 (W.D. Pa. Aug. 19, 2024). The court will dismiss this Eighth Amendment claim for failure to state a claim for relief.

### 2. Conditions of Confinement Claim

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination…deprive inmates of the minimal civilized measures of life's necessities." Id. at 347. Such necessities include "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9. However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Mammana v.

Fed. Bureau of Prisons, 934 F.3d 368, 372 (3d Cir. 2019) (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991), and Rhodes, 452 U.S. at 347).

O'Connor alleges that defendants Passaretti and Waldman violated his Eighth Amendment rights when they escorted him outside on "windy, rainy, and cold day." (Doc. 13 ¶¶ 21-22, 25-26). The amended complaint suggests that he was subjected to these conditions for a very short duration of time. The conditions of which O'Connor complains, while potentially unpleasant, do not rise to the level of an Eighth Amendment violation. O'Connor has failed to adequately allege that he was deprived of "the minimal civilized measure of life's necessities." Wilson, 501 U.S. at 298; see also Adderly v. Ferrier, 419 F. App'x 135, 140 (3d Cir. 2011) (nonprecedential) (holding that denial of access to clothing, toiletries, legal mail, a pillow, a mattress, and showers for seven days did not "constitute a denial of the 'minimal civilized measures of life's necessities'") (quoting Williams v. Delo, 49 F.3d 442, 444-47 (8th Cir. 1995)). The court, therefore, will dismiss O'Connor's Eighth Amendment claim concerning his conditions of confinement.

D. Fourteenth Amendment Equal Protection Claim

O'Connor next reasserts an equal protection claim that the court previously dismissed as implausible. (Doc. 9, at 19-20).

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (2) he was treated differently from similarly situated inmates. See id. Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination to state an equal protection claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Specifically, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). However, prison inmates are not members of a protected class. See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class).

O'Connor generally alleges that there was a "major security search of the *entire* A-Unit." (Doc. 13 ¶ 14) (emphasis added). He fails to allege how defendants treated him differently than others similarly situated. Additionally, O'Connor fails to identify any personal involvement by any named defendant that

would subject them to liability for any alleged equal protection violation. The amended complaint's allegations fail to cure any of the deficiencies in the original complaint. As such, the court will dismiss the equal protection claim.

E. State Law Claims

As the court has determined that it will dismiss all claims for which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over O'Connor's state law claims.

The potential basis for the court's jurisdiction over O'Connor's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 387 (1998) (citing 28 U.S.C. § 1367(a)).

Where a district court has original jurisdiction over federal claims and supplemental jurisdiction over state claims, the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

Here, the court has determined that it will dismiss all of O'Connor's claims for which it has original jurisdiction, *i.e.*, his federal claims under Section 1983.

Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over O'Connor's state law claims.

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

It would be futile to permit O'Connor leave to file a second amended complaint, as the allegations relating to his claims are both factually and legally flawed. O'Connor "has already had two chances to tell his story," and has wholly failed to remedy the deficiencies identified by the court in its prior memorandum and order. Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019). Accordingly, "giving him further leave to amend would be futile." Id.

## V. Conclusion

For the foregoing reasons, the court will grant defendants' motion to dismiss. (Doc. 14). An appropriate order follows.

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**

**Dated: November 2, 2026**